The issue on appeal is whether appellees' action seeking title to specific parcels of real estate promised them by the deceased and for which appellees had performed valuable services as consideration is barred by the statute of non-claims.
This action was brought by Roy N. Hannah and Mary Hannah, and Johnny Hughes and Burnett Hughes seeking title to two small tracts of land in St. Clair County.
The appellees Roy N. and Mary Hannah entered the lands they are claiming in 1964. Johnny and Burnett Hughes moved onto the lands they are claiming in 1968.
When the appellees entered the property in question, they entered with the permission of the owner, Edward Wadsworth, now deceased. With the exception of a brief period of time when the appellees Hughes moved away for a period of four or five months, both sets of appellees have occupied their respective parcels of property continuously from the time of entry until the time of trial. The size of the tract of land that the appellees Hughes are claiming is less than one acre. The tract of land that is claimed by the appellees Hannah is approximately one-half acre.
After they had entered the land with the permission of the owner, appellees stated that they desired to make permanent and valuable improvements to their homes. Before these improvements were made, however, Mr. Smith, the father of Mrs. Hughes and Mrs. Hannah approached Edward Wadsworth, the owner of the property, and informed him of the intentions of his daughters and their husbands concerning the property. It was testified that Mr. Wadsworth told Mr. Smith "to go ahead and let them build what they wanted because he was going to let them have the land." The appellees, claiming they relied on the assurances of Edward Wadsworth, constructed permanent homes upon their respective parcels of property.
The appellees Hannahs and Hugheses testified at the trial that sometime around 1972 they commenced to perform valuable services for Edward Wadsworth as consideration and payment for the land which they were occupying and to which they had been promised a deed. These services included twice painting Wadsworth's house, furnishing the labor and paint; making such repairs to his residence as repairing the eaves of the house and closing in some windows; placing Masonite siding and a new roof on his garage and assisting him with the general care and maintenance of his farm, including repairing his barns, *Page 1188 
fences and farm equipment. Each set of appellees estimated the total value of their services to be between $2,500 and $3,000.
According to the evidence, in the early part of 1978, Edward Wadsworth and his son, Michael, an appellant in this case, met appellees Roy Hannah and Johnny Hughes upon the land in question for the purpose of conducting a survey to obtain a legal description of the parcels Edward Wadsworth planned to convey to the appellees. With the assistance of Edward Wadsworth, his son, and Roy Hannah, a survey was prepared by Johnny Hughes, an experienced, though unlicensed, land surveyor. Testimony further indicated that the legal description of each parcel was taken to an attorney's office and that separate deeds were prepared for each parcel to await Edward Wadsworth's signature.
After the death of Edward Wadsworth, his son Michael inherited the farm. The appellees testified that Michael reassured them on several occasions that when the estate was settled, he would see that they received deeds. Although Michael testified that he never assured the appellees they would receive deeds and that it was almost two years after his father's death before he finally told the appellees that he would not give them a deed, he nevertheless acknowledged that it had been his father's intent to convey the land to the appellees.
The case was tried before the court without a jury on the testimony taken and the stipulations by the parties. The court rendered a decree in favor of the Hannahs and Hugheses and against Michael Wadsworth and his wife Jeanette.
When a trial judge hears ore tenus evidence in a case without a jury, this Court must necessarily follow the ore tenus rule, which requires that the findings of the trial court based on the ore tenus evidence are presumed correct and therefore will not be disturbed on appeal unless they are palpably wrong, without supporting evidence, or manifestly unjust. See generally 2A Ala. Dig., Appeal and Error, Key No. 931.
Appellants assert that the appellees' claim is one for specific performance of a contract and that the non-claims statute, Ala. Code 1975, § 43-2-350, and supporting case law bar those contract claims which are not presented against the estate of a decedent within six months after the granting of letters testamentary. Appellees, in their complaint, pray that after hearing "the Court will decree that [they] are the owners of the respective parcels of land. . . ." We perceive this is appropriately an equitable action seeking title to realty, and the statute of non-claims would have no application.
In an early case, Locke's Executor v. Palmer, 26 Ala. 312
(1855), the Court addressed the non-claims statute in an equitable redemption action in the following fashion:
 "The statute of non-claim is also urged as a bar to the relief sought. That statute provides that all claims against the estates of deceased persons shall be barred, unless presented to the executor or administrator within eighteen months after the grant of letters, or within that time after the claim shall accrue; with an exception in favor of infants, married women, and claims contracted out of the State. — Clay's Dig. 195, § 17. We are clear, this statute does not refer to claims of title, for the reason, that claims of such a character cannot, in any just sense, be said to be claims against the `estate' of the deceased: on the contrary, the right to recover is based upon the fact that the property claimed does not belong to the estate. . . ."
Cf. Porter v. Worthington, 14 Ala. 584 (1848), (wherein this Court held that an action to recover title to two tracts of land sold by an intestate, and for which he executed his bond for title, could not be maintained against the administrator because the "administrator, as such, had no interest in them"). Thus, claims of title, whether legal or equitable, are not within the ambit of the non-claims statute. Smith v. Gillam, 80 Ala. 296,300 (1885).
The facts of this case indicate that the deceased, Edward Wadsworth, unquestionably *Page 1189 
intended to convey the two parcels of realty in question to the appellees and that deeds were drawn up and awaiting Edward Wadsworth's signature to complete the formalities of the inter vivos transfer. Likewise, the facts show that appellees performed valuable services for the deceased and that they in reliance on the deceased's intention to convey the lots to them, constructed permanent homes on their respective parcels.
One of the traditional maxims of equity is that a court of equity treats as done that which ought to have been done to carry into effect the intention of the parties. Copeland v. Warren,214 Ala. 150, 152, 107 So. 94, 96 (1926); Newton v. Roe, 290 Ala. 191,194, 275 So.2d 135, 137 (1973). After carefully reviewing the record and the facts of this case, it is plain to the Court that appellees performed valuable services for Edward Wadsworth in reliance upon his agreement to convey to them the land upon which they constructed the homes in which they are now residing and that the deceased fully intended to convey the property to them but died before the deeds were delivered. This Court treats these facts as sufficient for the trial court to conclude that appellees were vested with equitable title to the property in question.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER, JONES, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON and BEATTY, JJ., dissent.