THIGPEN, Judge.
This is a divorce case.
In December 1992, Gaynell Heaps Dees filed a complaint for divorce from Dennis Daniel Dees, alleging that the parties married in April 1992 and separated in October 1992. She further alleged incompatibility of temperament and, inter alia, requested a property division. The husband answered and counterclaimed. He also filed a motion to show cause why he should not be entitled to possession of specific listed items of personal property. After ore tenus proceedings, the trial court divorced the parties, awarded the husband the requested personal property, and ordered the husband to pay to the wife $2,395 as alimony in gross within 45 days of the order. To insure payment of the alimony, the trial court ordered that the wife retain the husband’s baseball card collection until she received payment in full. The husband appeals.
The dispositive issue on appeal is whether the trial court erred in awarding the wife alimony in gross.
When a trial court is presented ore tenus evidence in a divorce case, its judgment is presumed correct if supported by the evidence. Waid v. Waid, 540 So.2d 764 (Ala.Civ.App.1989). Alimony in gross is similar to a property division in that it is absolute and permanent, and it is based upon the value of the wife’s interest in the husband’s estate. Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974). A property division pursuant to a divorce need not be equal, only equitable in light of the evidence, and what is equitable rests within the broad discretion of the trial court. Ross v. Ross, 447 So.2d 812 (Ala.Civ.App.1984). Furthermore, a property division favoring one party over the other does not in itself constitute an abuse of discretion. Jordan v. Jordan, 547 So.2d 574 (Ala.Civ.App.1989).
The record reveals that the wife’s monthly gross income of approximately $700 is derived from the operation of a day-care facility in her home, and that her income remained the same prior to and during the *947 marriage. Additionally, the wife testified that she acquired a second job and borrowed $1,000 to assist in meeting the expenses of the marriage. The husband testified that his monthly gross income prior to and during the marriage was approximately $2,000 from his employment with Alabama A & M University-
The record reveals that the husband estimated that he and the wife would save $711 dollars per month in expenses when they married if he moved from his rented home into the wife’s home. The wife testified, however, that after the marriage, her expenses greatly increased because she then assumed the responsibility of all household expenses, with the exception of the phone bill. She testified that she paid the phone bill out of the $600 in cash the husband contributed during the brief marriage.
The husband testified that during the marriage, he contributed approximately $800 to $1000 towards the marital expenses. He further testified that he paid all expenses relating to the car, installed ceiling fans and shelving in the wife’s home, rebuilt a storage shed, and paid for someone to perform yard work. The husband testified that he sold or gave away items that would not fit in the wife’s home, including a cast-iron toy collection, and that he applied approximately $1,300 of the proceeds from those items towards the home repairs and the purchase of additional furniture, and $1,300 towards the down payment on the ear. The husband also claims to have provided a large amount of kitchen and bathroom items for the home from his rental home. The husband asserted during the hearing that “all I’ve ever wanted was my personal items and things I carried into our marriage.” Those items were ultimately awarded to him by the trial court.
Although there was evidence that the husband’s income exceeded the wife’s income, there was little or no evidence regarding the disposition of his income. There was testimony, however, that the husband’s card collection, started in 1989, consisted of approximately 90,000 cards at the time of the hearing.
The wife testified that it would take approximately $3,000 to compensate her for what she expended during the marriage and to restore her to her position prior to the marriage.
In determining an award of alimony, the trial court may consider the parties’ earning ability and future prospects, their ages and health, the length of the marriage, the value and type of property, and the conduct of the parties. Kuhnel v. Kuhnel, 535 So.2d 164 (Ala.Civ.App.1988). In the instant case, although the late-in-life marriage was of short duration, there appears to have been an inequitable division of marital responsibilities. The record discloses that the trial court’s decision in this matter attempted to reposition the parties comparable to the position each occupied prior to the marriage. The trial court was in the best position to appraise the witnesses and their demeanor, and to adjudge their credibility. Porter v. Porter, 441 So.2d 921 (Ala.Civ.App.1983). Furthermore, “whether the husband’s separate estate should have been taken into consideration in determining an award of alimony in gross was particularly a matter placed in the trial court’s discretion.” Hudson v. Hudson, 531 So.2d 1243, 1243 (Ala.Civ.App.1988). Even if this court may have decided differently, it is not our function to reweigh the evidence or to substitute its judgment for that of the trial court. James v. James, 582 So.2d 560 (Ala.Civ.App.1991).
Based upon our thorough review of the record, we cannot conclude that the trial court erred in its award of alimony in gross to the wife, or that the award was so disproportionate as to be inequitable or to constitute an abuse of discretion. The judgment of the trial court is hereby affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.